Filed 5/6/21  VCA Animal etc. v. Yu CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| VCA ANIMAL HOSPITALS, INC. et al., | |
| Cross-complainants and Respondents, | E072926 |
| | (Super.Ct.No. CIVDS1827920) |
| v. | |
| DANIEL YU et al., | OPINION |
| Cross-defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County. Keith D. Davis, Judge. Affirmed.

Law Office of Bryan W. Pease and Brian W. Pease for Cross-defendants and Appellants.

Haight Brown & Bonesteel, Michael C. Parme, Arezoo Jamshidi, and Kathleen Moriarity for Cross-complainants and Respondents.

1

Daniel Yu and Susan Zhong sued California Veterinary Specialists and veterinarians Dr. Jennifer Hoose, Dr. Timothy Concannon, and Dr. Yenlie Zingale after their Maltese, Fluffy, died in the veterinarians' care.

Yu and Zhong alleged Fluffy died because Dr. Hoose mistakenly believed the plaintiffs had asked that the dog not be resuscitated if she stopped breathing. In investigating what had happened, Yu and Zhong secretly recorded a conversation with Dr. Hoose. According to California Veterinary Specialists and Dr. Hoose, they then used the recordings to demand Dr. Hoose's termination and later quoted the recordings in their complaint. Dr. Hoose and California Veterinary Specialists filed counterclaims against plaintiffs, alleging the recording invaded the veterinarian's privacy and violated the prohibition of Penal Code section 632 on recording confidential conversations. They seek statutory damages for the improper recording under Penal Code section 632.7, actual damages from emotional distress, and injunctive relief.

Yu and Zhong countered with a motion under the statute prohibiting strategic lawsuits against public participation (anti-SLAPP statute), Code of Civil Procedure section 425.16, asserting the lawsuit targeted their exercise of the right to petition the courts for redress because they made the recording in preparation for litigation.

The trial court denied their motion on the ground that recording a phone conversation is not protected conduct. We affirm because California Veterinary Specialists and Dr. Hoose have presented sufficient evidence to establish their claims under Penal Code section 632 and for invasion of privacy have minimal merit.

# I

# FACTS

A. *The Alleged Veterinarian Malpractice*

Daniel Yu and Susan Zhong took their 11-year-old Maltese, Fluffy, to VCA California Veterinary Specialists (CVS)[1] for care when she started having seizures.

CVS recommended leaving Fluffy overnight so their neurologist, Dr. Zingale, could examine her in the morning. Fluffy had another seizure and was having significant breathing problems the next day when Dr. Zingale examined her. An x-ray revealed she had a collapsed trachea. They treated Fluffy by sedating her and using an oxygen mask to prevent her from suffocating. When technicians took the oxygen mask off, she began suffocating again and needed to be resuscitated with CPR and a small dose of epinephrine.

The plaintiffs consulted with a veterinary surgeon about a procedure to place a stent in Fluffy's airway. The surgeon told them the procedure was noninvasive, fairly simple, and the surgery had a high success rate of 85 to 95 percent. They were told the problem with her trachea was her only life threatening condition, and they could manage her seizures with medication. Yu and Zhong decided to have CVS perform the procedure and paid a $6,000 deposit.

---

[1] The complaint identifies the corporate defendant as California Veterinary Specialists. The answer identifies the corporation as VCA Animal Hospitals, Inc. doing business as VCA California Veterinary Specialists. For simplicity, we refer to them as CVS in this opinion.

Early the next morning, Yu received a phone message from CVS asking him to call the hospital. When he called, they told him Fluffy had died overnight. When they got to the office, Dr. Zingale told them he wasn't present when Fluffy had died. They asked for Fluffy's records, where they found an email from Dr. Hoose to their regular veterinarian, in which Dr. Hoose reported, "Fluffy did go into cardiac arrest this evening. CPR was not started according to the owner's wishes. I am sorry to report the loss of this pet." The plaintiffs said the news came as a shock, because they had never given such instructions. CVS initially assured them they did attempt to resuscitate Fluffy and advised them to call and talk to Dr. Hoose that evening.

When they spoke to Dr. Hoose, she told them they didn't attempt CPR on Fluffy because Dr. Concannon had told her she had a do not resuscitate order. Due to the inconsistency of the stories, Yu and Zhong spoke to others at the hospital over the next few days. The hospital manager told them a technician named Jessica was watching Fluffy when she saw her struggling to breathe, and she took Fluffy out of the oxygen box to initiate CPR. The manager said Dr. Hoose stopped Jessica from performing CPR because she believed, wrongly, that her owners had requested she not be resuscitated. If a pet has a do not resuscitate order, the hospital's practice is to place a tag on their crate and a purple label on their charts; Fluffy had neither.

Dr. Concannon later told plaintiffs he thought Dr. Hoose had overheard a conversation between Dr. Zingale and another doctor and had inferred wrongly that Fluffy was not to be resuscitated. They asked Dr. Zingale about that conversation, and

4

she said it concerned whether to get an authorization not to resuscitate Fluffy in case something went wrong during surgery. However, CVS's regional medical director later told them that Dr. Hoose claimed Dr. Zingale told her directly that Fluffy was subject to an order not to resuscitate her. Yu and Zhong didn't believe Dr. Hoose's claim about Dr. Zingale and were suspicious because of the shifting stories they had heard from their veterinarians.

B. *The Lawsuit*

Yu and Zhong sued CVS and three of their veterinarians for negligence, conversion, and trespass to chattel. They also sued Dr. Hoose, Dr. Zingale, and Dr. Concannon for intentional infliction of emotional distress. They allege they suffered extensive economic loss, emotional distress, and pain and suffering after losing Fluffy.

Dr. Hoose and CVS filed a cross-complaint alleging causes of action for violation of Penal Code section 632 and invasion of privacy.[2] They alleged plaintiffs called their office asking to speak to Dr. Hoose about Fluffy's death. Dr. Hoose took the call at her personal desk, out of earshot of CVS's clients, to maintain privacy.

They allege Yu and Zhong recorded the phone call without informing Dr. Hoose or obtaining her consent. They say they learned of the recording a week later, when Yu and Zhong met with CVS's medical director and hospital manager. Yu and Zhong told them they had recorded their call with Dr. Hoose and had the recording transcribed. They say Yu and Zhong demanded that CVS terminate Dr. Hoose under threat that they would

---

[2] Dr. Concannon and Dr. Zingale were not parties to the cross-complaint and aren't parties to this appeal.

otherwise sue. Dr. Hoose says she was shocked to learn of the recording and has since suffered from anxiety and fear of being recorded by clients.

CVS and Dr. Hoose sued Yu and Zhong for violating Penal Code section 632 by recording the call and for common law invasion of privacy. They sought statutory damages under Penal Code section 637.2, actual damages, attorney fees and costs, and injunctive relief.

C.  *The Anti-SLAPP Motion*

Yu and Zhong moved to strike the cross-complaint as a suit against public participation. (Code Civ. Proc., § 425.16.) They argued their act of recording the conversation with Dr. Hoose is protected because it was part of their preparation for litigation. They also argued their recording did not violate Penal Code section 632 because Dr. Hoose had no reasonable expectation of privacy. Finally, they argued CVS and Dr. Hoose couldn't prevail on their claim for invasion of privacy because nothing was disclosed publicly.

At a hearing on the anti-SLAPP motion, the trial judge concluded surreptitious recording of a private conversation was not protected conduct under the anti-SLAPP statute.

Yu and Zhong timely appealed the order denying their motion to strike.

## II

## ANALYSIS

Yu and Zhong argue the trial judge erred by denying their motion to strike the allegations against them because recording the phone conversation with Dr. Hoose is protected conduct in anticipation of litigation, which respondents targeted to stop them from seeking redress in court and because they don't have minimal merit.

A. *Legal Background*

A strategic lawsuit against public participation (SLAPP suit) is "a meritless lawsuit 'filed primarily to chill the defendant's exercise of First Amendment rights.'" (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 861, quoting *Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2.) The California Legislature passed the anti-SLAPP statute, Code of Civil Procedure section 425.16, to cut SLAPP suits short, allowing a defendant to move to dismiss "certain unmeritorious claims that are brought to thwart constitutionally protected speech or petitioning activity." (*Robinzine v. Vicory* (2006) 143 Cal.App.4th 1416, 1420-1421.)

The anti-SLAPP statute provides, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the

7

claim." (Code Civ. Proc, § 425.16, subd. (b)(1), unlabeled statutory citations refer to this code.)

Faced with a special motion to strike, a trial court conducts a two-step analysis. "At the first step, the moving defendant bears the burden of identifying all allegations of protected activity, and the claims for relief supported by them. When relief is sought based on allegations of both protected and unprotected activity, the unprotected activity is disregarded at this stage. If the court determines that relief is sought based on allegations arising from activity protected by the statute, the second step is reached. There, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. The court, without resolving evidentiary conflicts, must determine whether the plaintiff's showing, if accepted by the trier of fact, would be sufficient to sustain a favorable judgment. If not, the claim is stricken. Allegations of protected activity supporting the stricken claim are eliminated from the complaint, unless they also support a distinct claim on which the plaintiff has shown a probability of prevailing." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396.)

Even if the defendant makes the required showing that the cause of action arises from protected speech or petitioning activity, the motion should be denied and the cause of action allowed to proceed if the plaintiff (here the counter-plaintiff) demonstrates "there is a probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1); see also *Medical Marijuana, Inc. v. ProjectCBD.com* (2016) 6 Cal.App.5th 602, 615.) "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that

arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to be stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) As a result, we may affirm denial of an anti-SLAPP motion based only on the fact that the claimant has established their claims have at least minimal merit. (*Ibid.*)

Under section 425.16, subdivision (b)(2), "the plaintiff must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." (*Navellier v. Sletten*, *supra*, 29 Cal.4th at pp. 88-89.) "In this sense, the anti-SLAPP statute operates like a 'motion for summary judgment in "reverse."'" (*Ralphs Grocery Co. v. Victory Consultants, Inc.*(2017) 17 Cal.App.5th 245, 261.)

We review de novo the trial court's order denying a motion to strike under section 425.16. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.) We consider the pleadings and supporting and opposing affidavits, and "accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 269, fn. 3.)

B. *Probability of Success on the Penal Code Section 632 Claim*

"A violation of section 632 is committed by anyone who 'intentionally and without the consent of all parties to a confidential communication, by means of any electronic amplifying or recording device, eavesdrops upon or records the confidential communication, whether the communication is carried on among the parties in the

presence of one another or by means of a telegraph, telephone, or other device, except a radio.'" (*Lieberman v. KCOP Television, Inc.* (2003) 110 Cal.App.4th 156, 161 (*Lieberman*).) Penal Code section 637.2 provides a private cause of action for anyone injured by a violation of Penal Code section 632. An injured party may recover the greater of $5,000 in statutory damages for each violation or treble actual damages and may, where appropriate, also obtain injunctive relief. (Pen. Code, § 637.2, subds. (a) & (b).)

Yu and Zhong argue CVS and Dr. Hoose can't establish they violated Penal Code section 632 because it wasn't reasonable to expect the conversation they recorded was private. "Penal Code section 632 protects only *confidential* communications, and a communication is not confidential when the parties may reasonably expect other persons to overhear it. [Citation.] A communication is confidential where a party to the conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." (*Lieberman*, *supra*, 110 Cal.App.4th at p. 168.) It is sufficient to sustain a claim under Penal Code section 632 if the complaining party alone had a reasonable expectation of privacy. (Pen. Code, § 632, subd. (c) [defining "confidential communication" as including "any communication carried on in circumstances as may reasonably indicate that *any party* to the communication desires it to be confined to the parties thereto," italics added]; see also *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768, 774-775.)

Yu and Zhong point to their own expectations, not Dr. Hoose's, to support their argument that it wasn't reasonable to expect privacy. According to their declarations, the rooms in the veterinarians' office space are all connected and it's easy to overhear everything. Though they acknowledge Dr. Hoose says she took the call at her personal desk, they emphasize she never told them her location, and they conclude *they* "reasonably believed the call was being taken where they had seen other calls being taken, in areas where other staff can easily overhear the conversation."

That's not the right question. What CVS and Dr. Hoose allege is that Dr. Hoose took the call at her personal desk and that she did so to maintain the confidentiality of the conversation. It's enough to prevail on a claim for Dr. Hoose herself to have had a reasonable expectation that the call would be private. Her declaration is sufficient to establish a prima facie case that she had such an expectation. She offers to testify that she "intentionally took the call at my personal desk out of earshot of [their] clientele to maintain the privacy of the call" because she knew she "would be discussing the sensitive and private subject of a patient's care and passing with the patient's owners."

It's a factual question whether her expectation was objectively reasonable. "The concept of privacy is relative. [Citation.] Whether a person's expectation of privacy is reasonable may depend on the identity of the person who has been able to observe or hear the subject interaction. [Citations.] The presence of others does not necessarily make an expectation of privacy objectively unreasonable but presents a question of fact for the jury to resolve." (*Lieberman*, *supra*, 110 Cal.App.4th at p. 169.) Under this precedent,

11

CVS and Dr. Hoose have presented sufficient allegations and support to establish that she had a reasonable expectation of privacy when she took the call even if there were other people present in the office as Yu and Zhong suspect.

We therefore conclude CVS and Dr. Hoose have satisfied their burden under Code of Civil Procedure section 425.16 to present a prima facie case that Yu and Zhong violated Penal Code section 632 by recording their telephone call. We don't, of course, resolve the ultimate question, which may turn on the credibility of the witnesses, particularly Dr. Hoose herself. (*Seelig v. Infinity Broadcasting Corp.* (2002) 97 Cal.App.4th 798, 809.) A jury must decide whether under the circumstances Dr. Hoose could have reasonably expected that the communications were private.[3] (*Lieberman*, *supra*, 110 Cal.App.4th at p. 168.)

C. *Probability of Success on the Invasion of Privacy Claim*

The same holds for respondents' invasion of privacy claim. "A privacy violation based on the common law tort of intrusion has two elements. First, the defendant must

_____

[3] We emphasize our conclusion does not mean that Yu and Zhong cannot sue CVS and Dr. Hoose for their malpractice or present evidence of Dr. Hoose's statements. Penal Code section 632 prohibits recording confidential communications, but "does not prohibit the disclosure of information gathered in violation of its terms." (*Lieberman*, *supra*, 110 Cal.App.4th at p. 167; see also *Frio v. Superior Court* (1988) 203 Cal.App.3d 1480, 1485 ["testimony relating [a party's] present recollection of the contents of telephone conversations with others, even if refreshed by notes prepared in part by reference to tape recordings made in apparent violation of section 632, is not evidence obtained as a result of the illegality"]; *People v. Crow* (1994) 28 Cal.App.4th 440, 452 ["Evidence of confidential conversations obtained by eavesdropping or recording in violation of section 632 is generally inadmissible. . . but can be used to impeach inconsistent testimony by those seeking to exclude the evidence"].) The facts are the facts, notwithstanding appellant's possible misconduct while uncovering them.

intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person." (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 286.)

"To satisfy the first element, 'the plaintiff must show the defendant penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff. The tort is proven only if the plaintiff had an objectively reasonable expectation of seclusion or solitude in the place, conversation or data source.' [Citation.] The expectation of privacy need not be complete or absolute privacy. Rather, '[p]rivacy for purposes of the intrusion tort must be evaluated with respect to the identity of the alleged intruder and the nature of the intrusion.' [Citation.] '[D]etermining offensiveness requires consideration of all the circumstances of the intrusion, including its degree and setting and the intruder's "motives and objectives."'" (*Huntingdon Life Sciences, Inc. v. Stope Huntingdon Animal Cruelty USA, Inc.* (2005) 129 Cal.App.4th 1228, 1259-1260.)

Yu and Zhong argue respondents failed to allege sufficient facts to make out an invasion of privacy claim because they disclosed nothing publicly and didn't intrude into Dr. Hoose's private affairs. We disagree with this characterization of what's alleged. Yu and Zhong recorded a telephone conversation with Dr. Hoose, transcribed the recording, and then took it to Dr. Hoose's employer to demand her termination. The recording itself is the intrusion, and the disclosure occurred when Yu and Zhong took a transcript of the

13

conversation to Dr. Hoose's employer. At the end of the day, a jury may find the conversation was not private, but if it was these facts are sufficient to establish intrusion.

Yu and Zhong argue Dr. Hoose didn't have a reasonable expectation of privacy because other people could have heard the phone call. However, our Supreme Court has more than once held, in the context of an invasion of privacy claim, that a person's reasonable expectation of privacy is a question of fact that is not necessarily defeated by evidence that someone else could have overheard the conversation. (*Hernandez v. Hillsides, Inc.*, *supra*, 47 Cal.4th at p. 288.) Indeed, the Court has held that even "a person who lacks a reasonable expectation of *complete* privacy in a conversation, because it could be seen and overheard by coworkers (but not the general public), may nevertheless have a claim for invasion of privacy by intrusion based on a television reporter's covert videotaping of that conversation." (*Sanders v. American Broadcasting Companies* (1999) 20 Cal.4th 907, 923, italics added.) We believe the principle holds for covert audio recordings made by a client as well, at least where, as here, the person who was taped represents she took the call in a personal space and away from other clients.

Yu and Zhong argue in their reply brief that even if their conduct invaded Dr. Hoose's privacy, it didn't do so in a manner highly offensive to a reasonable person. By failing to raise the issue until their reply brief without justification, they have forfeited the issue. (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115 ["""[T]he rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before"""].) In any event, we conclude it

is a factual question whether the covertly recorded phone conversation was highly offensive to a reasonable person. (See *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 236 ["determining offensiveness requires consideration of all the circumstances of the intrusion, including its degree and setting and the intruder's 'motives and objectives'"].) We therefore conclude there is at least minimal merit to the claim that Yu and Zhong violated and invaded Dr. Hoose's privacy by recording their telephone call.[4]

## III

## DISPOSITION

We affirm the order denying Yu and Zhong's special motion to strike. Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
J.

We concur:


CODRINGTON _____
Acting P. J.

FIELDS _____
J.

---

[4] We note that while both causes of action may go forward, as a corporation, CVS itself may pursue an action for the violation of Penal Code section 632 but not for common law invasion of privacy. (*Coulter v. Bank of America* (1994) 28 Cal.App.4th 923, 930.)